### THE PERRY G. WALKER.

#### In re GILCHRIST TRANSP. CO. et al.

#### (District Court, W. D. New York. June 5, 1914.)

1. ADMIRALTY (§ 85*)—FINDINGS OF COMMISSIONER—REVIEW.

   The rule that findings of fact made by a commissioner in an admiralty suit are presumptively correct, and that the burden rests on one attacking them to show error, applies not only where the witnesses appear before him and the testimony is conflicting, but also in cases wherein his conclusions are based on documentary evidence, and where the reviewing court has an equal opportunity for the exercise of individual judgment.

   [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 619, 620; Dec. Dig. § 85.*]

2. SHIPPING (§ 210*)—PROCEEDINGS FOR LIMITATION OF LIABILITY—INTEREST.

   Where the insurers of a vessel are the real petitioners in a proceeding for limitation of liability, the appointment of receivers in insolvency for the owner is not ground for disallowance of interest on the stipulated value, but when there has been undue delay in the proceedings, due largely to the fault of claimants, such fact may properly be taken into consideration in the allowance of interest.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 660; Dec. Dig. § 210.*]

In Admiralty. Petition by the Gilchrist Transportation Company, as owner of the Steamship Perry G. Walker, and by George A. Garretson and Samuel P. Shane, as receivers of said company, for limitation of liability. On exceptions to report of commissioner. Confirmed.

Convers & Kirlin, of New York City, and Charles B. Sears, of Buffalo, N. Y. (J. Parker Kirlin and Charles R. Hickox, both of New York City, of counsel), for petitioners.

Hermon A. Kelley, of Cleveland, Ohio (Hoyt, Dustin, Kelley, Mc-

---

Keehan & Andrews and George W. Cottrell, all of Cleveland, Ohio, of counsel) for Pittsburgh S. S. Co.

Clinton & Clinton, of Buffalo, N. Y. (George Clinton, Jr., of Buffalo, N. Y., of counsel), for Canadian Pac. Ry. Co.

Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y. (Edw. H. Letchworth, of Buffalo, N. Y., of counsel), for His Britannic Majesty, as represented by the Government of the Dominion of Canada.

HAZEL, District Judge. This case comes before me upon exceptions filed by the petitioners to the report of the commissioner as to the amounts awarded by him to the Pittsburgh Steamship Company, owner of the steamship Crescent City, the Canadian Pacific Railway Company, owner of the steamship Assinoboia, and His Britannic Majesty, as represented by the government of the Dominion of Canada, owner of locks at Sault Ste. Marie, and as to the estimate made by him of the sound value of the steamer Perry G. Walker. In the brief submitted by proctors for the Pittsburgh Steamship Company, there is a suggestion that the latter is entitled to a preferential lien on the limitation fund as against the dominion government, and at the first hearing proctors for the dominion government contended on various grounds that the dominion government was entitled to a paramount lien on the fund. These contentions, however, were not pressed at the rehearing, and therefore, without dwelling at length upon the question of priority of claim, I hold that all the claimants are entitled to share pro rata in the fund, and that none of them is entitled to preferential payment, but that each is on a parity with the others.

According to the report of the commissioner, the steamship Crescent City was damaged to the amount of $146,843.14, the Assinoboia to the amount of $35,965.47, and the Canadian locks at Sault Ste. Marie to the amount of $51,824.15; and the petitioner, the Gilchrist Transportation Company, owner of the steamer Perry G. Walker, was entitled to limit its liability to $204,109.35, the damaged value of the Walker on June 7, 1909, including pending freight, amounting to $1,831.26.

By agreement of the parties, as evidenced by a stipulation filed herein, it appears that on June 7, 1909, the steamer Walker, a large freight carrier, collided with the lower Canadian lock gates at Sault Ste. Marie, while the steamers Assinoboia and Crescent City were in the lock, or entering it, and, as the lock gates were broken by the violence of the contact, the downward rush of the water brought together with great force, first the Assinoboia and the Walker, and then the Crescent City and the Assinoboia; all three vessels being greatly injured, as were also the lock, lock gates, and banks. The collision concededly resulted entirely from the negligent navigation of the steamer Walker, although the resultant damage was without the knowledge or privity of her owner.

The contention of the petitioners is that the commissioner erred in refusing to find that the sound value of the Walker did not exceed the amount of $185,000, and that the so-called damaged value did not exceed the sum of $147,278.09. After careful consideration I have reached the conclusion that the exceptions to the report are untenable,

and that the sound value and damaged value of the steamer were correctly ascertained. The findings of fact of the commissioner are presumptively correct, even though the witnesses did not personally appear before him and give testimony.

[1] The general rule puts upon the petitioners the burden of proof that the commissioner was mistaken in his conclusions, and this rule I conceive applies, not only where the witnesses appear before him and the testimony is conflicting, but also in cases wherein his conclusions are based upon documentary evidence, and where the reviewing court has an equal opportunity for the exercise of individual judgment. I think that this presumption is not overcome by the testimony of the petitioners, and that there was sufficient proof to sustain the report. It may be that, if the evidence had been before me in the first instance, I might have found the sound value of the Walker to have been somewhat less, and perhaps have differently supported my conclusions (as to this I am unable to state positively); still in the record I discover no sufficient ground for modifying the findings or for differently chancering the items.

The petitioners criticize the commissioner for wholly disregarding the estimates of their witnesses as to the value of the steamer owned by them, but the criticism is not warranted by the proofs, and I am unpersuaded that he erred in that respect. His estimates were primarily based on the ordinary cost of constructing a vessel of the dimensions, burden, and type of the Walker at the time she was prepared for navigation. The testimony of the claimants clearly shows that her fair value at such time in fact exceeded the cost of her construction, since, according to the unequivocal testimony of the expert witnesses Calder and Logan for claimants, there was a saving of $7,500 in the cost of building the Walker, because she was built under a contract for the building of eight vessels of similar dimensions and type, and that such saving was possible owing to the use of one set of drawings, patterns, molds, etc. The testimony of a contrary import is not entitled to as much weight as is the foregoing testimony, inasmuch as the witnesses for petitioners omitted from their calculations various items of expense necessarily incurred in the construction of a solitary vessel of the type, burden, and class in question, and which would have been incurred in the construction of the Walker, had she not been built under the contract already referred to. The commissioner, I think, rightly took into consideration what it would actually have cost to construct the Walker independently of the other seven vessels, and that a single construction would have incurred expenses for inspection, interest on payments, etc., which, under the contract, were distributed among the several boats. I am therefore of the opinion that the value of the Walker at the time of her completion exceeded the actual cost of constructing and fitting her for navigation.

I have also examined into the asserted depreciation in the value of the Walker on account of obsolescence on the ground that, subsequent to her construction, steel vessels were built with supporting arches in place of stanchions, but I do not think that this fact greatly lessened her value, or made her objectionable for transporting purposes or de-

creased her earning capacity. The evidence shows that, at the time she was built, her stanchions were of the latest type and were set back four feet from the hatch openings, thus facilitating loading and unloading, and overcoming the objections to prior vessels, wherein the stanchions were set close to the hatch openings. It is perhaps true that the later arch type of vessels possesses some advantages not possessed by the Walker or stanchion type of boat, but not so many as to appreciably affect the value. As well said by the commissioner in the opinion filed by him with this report:

"It is more theory than fact that a vessel of the arch construction type can be so much more expeditiously unloaded than the Walker, as is claimed by some of the witnesses, and that the dock owners refuse to unload such vessels as the Walker. The uncontradicted testimony of the witnesses having similar boats engaged in carrying bulk freight is to the contrary. Furthermore, as a matter of fact, for the purpose of carrying many mixed cargoes, where temporary bulkheads are needed, a vessel of the Walker construction is better or more convenient than one having an arch construction."

[2] It is next urged, in behalf of the petitioners, that they should not be required to pay interest on the amount of the limitation fund on the grounds that the Gilchrist Transportation Company is insolvent; that the receivers are trustees; and that there was delay by the claimants in taking their testimony. It appears that the receivers were appointed in an equity proceeding to conserve the assets of the company on account of insolvency. But, however that may be, the record suggests that the liability for losses herein will be met by the underwriters of the Walker, who are the real petitioners, and, assuming such to be the case, interest obviously should not be disallowed on the ground of trusteeship or insolvency.

The proceeding, however, should have been expedited. The libel was filed January 15, 1910, six months after the disaster, and the petition for limitation of liability on March 1, 1910. The record shows that both sides at various times accommodated each other in the taking of testimony by continuances, and that there was further delay after the first hearing, owing to the joint acts of the parties. While it is not clear that the case at any time was unduly delayed by claimants, still I think there was such amiable acquiescence in postponements and continuances that to allow interest from the time of the accident would not be fair. But I think that interest should be allowed on the amount unpaid by the petitioners from the time the commissioner filed his report, to wit, on April 2, 1913, and that owing to the early concession by the petitioners of sole fault for the collision, and their willingness from the beginning to stipulate the claim on presentation of bills for repairs and construction, without other proof of claims, and taking into consideration their partial payment of losses on June 10, 1911, in a substantial amount, the interest from the date of the report should be at the rate of 3 per cent. only.

A decree, with cost, will therefore enter, confirming the report of the commissioner, and conforming with this decision as to preferential payments and interest.